UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRIS FINK,                                      )
                                                 )
Plaintiff,                                       )
                                                 )
v.                                               )
                                                 )        Case No. 4:19-cv-00827-SPM
                                                 )
                                                 )
                                                 )
ANDREW M. SAUL, [1]                              )
Commissioner of Social Security,                 )
                                                 )
Defendant.                                       )

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final

decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner")

denying the applications of Plaintiff Chris Fink ("Plaintiff") for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*

(the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant

to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was supported by

substantial evidence, I will affirm Commissioner's denial of Plaintiff's applications.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to
Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill
as defendant in this action. No further action needs to be taken to continue this suit by reason of
the last sentence of 42 U.S.C. § 405(g).

## I.   STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fire*s, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ [Administrative Law Judge], and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## II.   PROCEDURAL BACKGROUND

In 2012, Plaintiff applied for DIB and SSI, alleging disability beginning on June 30, 2010. (Tr. 83). These claims were denied initially and on reconsideration, and on May 13, 2014, after a hearing, an ALJ found Plaintiff was not disabled within the meaning of the Act. (Tr. 83-91).

On June 23, 2014, Plaintiff again applied for DIB and SSI, again alleging disability beginning on June 30, 2010. (Tr. 233-37, 238-43). He alleged disability based on hepatitis C; bipolar disorder; irritable bowel syndrome; arthritis in his pelvis, back, spine, and neck; and rheumatoid arthritis. (Tr. 264). Plaintiff's new claims were denied initially and on reconsideration. (Tr. 152-59, 161-72). On May 18, 2017, a second ALJ held a hearing on Plaintiff's new claims. (Tr. 40-60). On July 3, 2017, the ALJ issued an unfavorable decision, finding that Plaintiff had not shown a basis for reopening the Commissioner's prior determination that Plaintiff was not disabled prior to May 13, 2014, and that Plaintiff had not been under a disability, as defined in the Act, from May 13, 2014, through the date of her decision. (Tr. 20-31).

On July 6, 2018, the Appeals Council of the Social Security Administration granted Plaintiff's request for review of the ALJ's decision, and it notified Plaintiff that it was planning to issue a new decision finding Plaintiff disabled as of June 9, 2017. (Tr. 5, 226-32). On December 4, 2018, the Appeals Council issued a partially favorable decision. (Tr. 5-10). The Appeals Council adopted the findings of the ALJ with regard to the period before June 9, 2017. (Tr. 6). However, the Appeals Council found that Plaintiff was disabled as of June 9, 2017, the date on which Plaintiff became an individual of advanced age within the framework of Medical-Vocational Rule 202.06, Table No. 2 of 20 C.F.R. Part 404, Subpart P App'x 2. (Tr. 8). The decision of the Appeals Council stands as the final decision of the Commissioner of the Social Security Administration.

### III.   FACTUAL BACKGROUND

At the May 2014 hearing before ALJ Chris Hunt, Plaintiff testified as follows. He has chronic pain in his hip, related to past surgery and screws that were placed in his hip. (Tr. 67). He also has lower back pain. (Tr. 68). Most of the day, he is on the couch with his legs elevated to take the pain off his lower back. (Tr. 70). The pain keeps him from sleeping through the night. (Tr. 70). He also has issues with irritable bowel syndrome about ten to fourteen days a month, which involves constant diarrhea. (Tr. 71-72). He also has a history of hepatitis C that causes pain in his liver. (Tr. 74). Plaintiff estimated that he could lift ten to thirty pounds from a table; could stand for one to two hours at a time; and could sit for about an hour at a time. (Tr. 74-75).

At the May 2017 hearing before the second ALJ, Lisa Leslie, Plaintiff testified as follows. He is right-handed and broke his right wrist and arm in a fall a couple of months prior to the hearing. (Tr. 46). He also tore his rotator cuff in his right shoulder, which affects his ability to raise his arm above his head. (Tr. 47-48). Plaintiff also has pain in his right foot. (Tr. 49). He has low back pain that is constant; it is treated with ibuprofen and gabapentin. (Tr. 50). Sometimes the pain gets so bad that he cannot even walk and has to lie on the couch. (Tr. 51). Plaintiff also has IBS, and when he has a flare-up, he is homebound because he needs to be close to the toilet. (Tr. 52). His pain issues also affect his ability to sleep at night, and he sleeps intermittently during the day for three to four hours to catch up. (Tr. 52-53).

The medical records dated during the relevant time frame show that Plaintiff frequently reported lower back pain (Tr. 382, 385, 467, 469, 471) and left hip pain (Tr. 382, 383, 467, 471, 474) and it was noted that he had previously had surgery and had screws and a plate in his left hip. (Tr. 383). He was treated at various times with medications including ibuprofen (Tr. 382, 474, 471), Naprosyn (Tr. 382), gabapentin (Tr. 471), methocarbamol (Tr. 474), nabumetone (Tr. 385),

Flexeril (Tr. 382, 385), prednisone (Tr. 380), and hydrocodone (Tr. 467), and sometimes injections (Tr. 467, 469). It was also frequently noted that he had hepatitis C, irritable bowel syndrome, insomnia, shoulder pain, and/or gastroesophageal reflux disease ("GERD") (Tr. 380, 382, 383, 474, 471), and he was sometimes treated with Zantac (Tr. 383). On at least one occasion, he was given a Depo-Medrol injection for his shoulder pain. (Tr. 474). He was also diagnosed at one point with carpal tunnel syndrome and abscess. (Tr. 414-15). A January 2014 X-ray of the left hip showed postsurgical changes with mild narrowing of the joint space and no evidence of acute bony abnormality, and October 2014 imaging showed no evidence of lumbar spine disease. (Tr. 389, 458). In October 2016, imaging showed mild degenerative changes of the right ankle and knee and prominent varicose veins. (Tr. 489). In March 2017, Plaintiff fell off a ladder, and an X-ray of his hand showed a mildly comminuted fracture of the distal right radius; he was referred to orthopedics (Tr. 467, 486). Also in March 2017, he was diagnosed with a foot callus and referred to a podiatrist. (Tr. 467).

In October 2014, Raymond Leung, M.D., an internist, conducted a consultative examination of Plaintiff. (Tr. 450-53). Dr. Leung found, *inter alia,* that Plaintiff had a slight limp, had an enlarged liver; was able to walk 50 feet unassisted; was able to hop, heel walk, toe walk, and squat; had difficulty tandem walking; had decreased range of motion in the cervical and lumbar spine; had positive straight leg raise tests; had 4+/5 strength in the upper and lower extremities; and had no difficulty getting on and off the examination table. (Tr. 452). The impression was rheumatoid arthritis, with decreased range of motion in the cervical and lumbar spine and a slight limp; irritable bowel syndrome, and hepatitis C. (Tr. 452).

Also in October 2014, Stephen G. Vincent, Ph.D., conducted a psychological evaluation of Plaintiff. (Tr. 445-48). Dr. Vincent noted, *inter alia*, that Plaintiff had emotional instability

resulting in irritability and agitation; that he had emotional instability and lability, with episodes of problematic depression; that he had pressure, push of speech, and ease of distractibility due to his preoccupation with pain and low tolerance for stress and frustration; that he reported no history of formal psychological or psychiatric treatment and took no psychopharmacological agents; and that cognitively he was intact but sometimes had difficulty fully utilizing and actualizing thought processes and problem-solving abilities secondary to his preoccupation with pain. (Tr. 447-48). The impression was major depression, recurrent, moderate to moderately severe. (Tr. 448).

On October 30, 2014, non-examining state agency psychologist M.W. DiFonso, Psy.D. opined that Plaintiff had mild restrictions in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace; and had no repeated episodes of decompensation of extended duration. (Tr. 100-01). Dr. DiFonso opined that Plaintiff had only non-severe mental impairments. (Tr. 101). At the reconsideration stage, on March 28, 2015, Ellen Rezenfeld, Psy.D.,  made the same findings. (Tr. 126-27).

On November 17, 2014, non-examining state agency physician Julio Pardo, M.D., opined that Plaintiff could occasionally lift and/or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and/or walk for a total of about 6 hours in an 8-hour workday, and had unlimited pushing and pulling ability. (Tr. 102). He noted that although Plaintiff had decreased range of motion of the spine, lumbar X-rays did not show any abnormality. (Tr. 102). Dr. Pardo opined that the medium RFC was due to fatigue related to liver disease. (Tr. 102). Dr. Pardo also opined that Plaintiff could only climb ladders, ropes, and scaffolds occasionally; could climb ramps and stairs frequently; and could stoop, kneel, crouch, and crawl frequently. (Tr. 103). He opined that these limitations were due to Plaintiff's cervical and lumbar spine arthritis. (Tr. 103).

At the reconsideration stage, on April 25, 2015, Hemantha, Surath, M.D. found Plaintiff had the same limitations as were found by Dr. Pardo. (Tr. 128-29).

**IV.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT**

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled within the meaning of the Social Security Act. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the

claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that,

given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## V.   THE DECISIONS OF THE ALJ AND THE APPEALS COUNCIL

In her decision, the ALJ first noted that because Plaintiff alleged a disability onset date of June 30, 2010, which predated the May 13, 2014 unfavorable determination on his earlier-filed claims, the Plaintiff was making an implied request for a reopening of the previous unfavorable determination. (Tr. 20). The ALJ found no basis for reopening the prior determination, found that the prior unfavorable hearing decision was final and binding, and addressed the question of whether Plaintiff had become disabled at any time after May 13, 2014, the date of the prior ALJ's unfavorable hearing decision. (Tr. 20). Applying the foregoing five-step analysis to the period after May 13, 2014, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014; that Plaintiff had not engaged in substantial gainful activity since May 13, 2014; that Plaintiff has the severe impairments of mild narrowing of the left hip joint space, mild degenerative changes of the lumbar spine, and depression; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 23-24). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] should never climb ropes, ladders, or scaffolds. [Plaintiff] can occasionally stoop, crouch, crawl, and climb ramps and stairs. [Plaintiff] is limited to performing simple, routine tasks, but not at a fast pace, such as assembly line work.

(Tr. 25). At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work as a truck driver. (Tr. 29). However, at Step Five, relying on the testimony of a vocational expert,

the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier, order caller, and information clerk. (Tr. 30). Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from May 13, 2014 through the date of the decision. (Tr. 31).

On review of the ALJ's decision, the Appeals Council adopted the ALJ's findings and conclusions at each step of the five-step evaluation process for the period before June 9, 2017. (Tr. 6-7, 24-25). Accordingly, the Appeals Council found that Plaintiff had not been disabled from May 13, 2014, though June 8, 2017. (Tr. 8). However, the ALJ noted that as of June 9, 2017, Plaintiff attained age 55, which is defined as an individual of advanced age. The Appeals Council found that for the period beginning June 9, 2017, an individual with Plaintiff's vocational factors and RFC is disabled within the framework of Rule 202.06, Table No. 2 of 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 8). Because Plaintiff was not disabled at any time prior to his date last insured, the Appeals Council found Plaintiff was not eligible for DIB benefits. (Tr. 9). However, he was eligible for SSI benefits beginning on June 9, 2017. (Tr. 8).

**VI.   DISCUSSION**

Plaintiff is proceeding in this case *pro se*, and the nature of Plaintiff's challenge to the Commissioner's decision is somewhat unclear. (Pl.'s Br., Doc. 13). Plaintiff argues that the Commissioner's decision should be reversed. He argues that he should not have received partial disability, because he is 100% disabled. This appears to be an objection to the Appeals Council's partially favorable decision finding that he was disabled only after he turned 55 on June 9, 2017 and not before then. He also appears to argue that back pay was owed to him from 2014 through 2019; again, this appears to be a challenge to the finding that he was not disabled prior to 2017. Plaintiff also makes some other statements that do not appear to be supported by the record. He

states that he was found disabled in 2010, but that statement does not appear to be supported by the record; it may be that Plaintiff is referring to an agency other than the Social Security Administration that made a disability determination. He also states that in 2014, a judge ruled that he was disabled, but he was not informed of the hearing, was not present at the hearing, and was not informed that he was able to draw a check. However, the administrative record shows that Plaintiff did appear (via teleconference) at the April 9, 2014 hearing (Tr. 63-77), and that later in 2014 the ALJ issued a decision finding Plaintiff *not* disabled (Tr. 80-91). Plaintiff also appears to argue that when he turned 55 years old (on June 9, 2017), he "automatically should have been drawing a check because [he] could not work  anymore." However, the decision finding him disabled as of his 55th birthday was not made until December of 2018, and Plaintiff acknowledges that he started receiving checks in 2019. Plaintiff appears to suggest that some of his back pay was wrongfully paid to his lawyer and the Social Security Administration and that they received the money only "because the document was frauded"; however, Plaintiff does not specify what document was fraudulent, who the lawyer was, or what amount was wrongfully paid to either his lawyer or the Social Security Administration. Plaintiff also states that his money "was going away without [his] consent to Stookey Township, but it is not clear how that complaint relates to his Social Security claims.

Reading Plaintiff's *pro se* brief broadly, the Court will construe Plaintiff's complaint as a challenge to the Commissioner's finding that he was not disabled from May 13, 2014 through June 9, 2017, the date of his 55th birthday.[2] In the absence of any more specific argument, the Court

---

[2] It does not appear that Plaintiff is asking the Court to review the ALJ's decision not to reopen the earlier determination that Plaintiff was not disabled between June 30, 2010, and May 13, 2014. To the extent that he is asking the Court to review that decision, the Court notes that it lacks jurisdiction to do so. "Under § 405(g), courts generally lack jurisdiction to review the Commissioner's refusal to reopen the proceeding because a refusal to reopen the proceeding is not

will examine the record to determine whether each of the Commissioner's conclusions is supported by substantial evidence.

After reviewing the record as a whole, the Court finds substantial evidence to support that the Commissioner's determination that between May 13, 2014, and June 9, 2017, Plaintiff was not disabled within the meaning of the Act.

## A. The Commissioner's Findings at Step Two

At Step Two, the Commissioner must determine whether the claimant has a "severe medically determinable physical or mental impairment that meets the [12-month] duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement . . . ." *See* 20 C.F.R. §§ 404.1509, 416.909, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To be a "medically determinable" impairment, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The Commissioner] will not use [a claimant's statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521, 416.921. To be a "severe impairment," an impairment must "significantly limit[] ]the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522, 416.922. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir.

---

a 'final decision of the Commissioner . . . made after a hearing." *Efinchuk v. Astrue*, 480 F.3d 846, 848 (8th Cir. 2007) (quoting 42 U.S.C. § 405(g)). "Jurisdiction may exist . . . if the claimant challenges the refusal to reopen the proceeding on constitutional grounds," *id.*, but that is not the situation here.

2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard," and the Eighth Circuit has upheld on numerous occasions the Commissioner' finding that a claimant failed to make this showing." *Kirby*, 500 F.3d at 707 (internal citation omitted).

At Step Two of the analysis, the ALJ found that Plaintiff's severe impairments were mild narrowing of the left hip joint space, mild degenerative changes of the lumbar spine, and depression; those findings were adopted by the Appeals Council. (Tr. 6, 23). The ALJ found that Plaintiff's irritable bowel syndrome, GERD, hepatitis C, allergic rhinitis, mild degenerative changes of the right ankle and foot, foot callus, and status post fracture of the right arm in March 2017 were not severe impairments because they did not have a significant impact on Plaintiff's functional capacity. (Tr. 23). She also found that Plaintiff's alleged rheumatoid arthritis was not a medically determinable impairment, because the medical record did not contain a positive rheumatoid factor or treatment with a rheumatologist. (Tr. 23). Similarly, the ALJ found that Plaintiff's history of a torn rotator cuff in the right shoulder was not a medically determinable impairment, because there was no evidence of an abnormal radiograph or imaging study supportive of a specific pathological process, and Plaintiff was diagnosed only with "unspecified" shoulder pain. (Tr. 23-24).

Plaintiff does not specifically challenge any of these findings and does not contend that the ALJ erred in finding any particular impairment to be non-severe or not medically determinable. A review of the medical records dated during the relevant time frame shows that the ALJ's findings were reasonable and are supported by substantial evidence. As the ALJ noted, the impairments of shoulder pain and rheumatoid arthritis were not supported by objective medical evidence and thus were not medically determinable impairments. Plaintiff's hand and wrist fracture and foot callus diagnosis occurred shortly before the ALJ's decision, and there is no evidence to show that they

would satisfy the duration requirement. Although Plaintiff's lists of diagnoses during the relevant time frame often included hepatitis C and irritable bowel syndrome, he complained of few associated symptoms and he received little or no treatment for those conditions. Plaintiff did not describe to his treatment providers the type of frequent and severe diarrhea that he alleged in his testimony; most complaints of diarrhea occurred in 2009, well before the alleged onset date. (Tr. 407, 387, 386). The ALJ reasonably concluded that these impairments did not impose significant limitations on Plaintiff's ability to perform basic work activities.

With regard to Plaintiff's mental impairments, the ALJ reasonably found Plaintiff's depression to be severe. There are no other mental diagnoses in the record.

For all of the above reasons, the Court finds the Commissioner's findings at Step Two are supported by substantial evidence.

### B.  The Commissioner's Findings at Step Three

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"); that finding was adopted by the Appeals Council. (Tr. 7, 24-25). The Listings "describe[] for each of the major body systems impairments that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). "The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "The severity standards for Listing-level impairments are high, because 'the listings [for adults] were designed to operate as a presumption of disability that makes further

inquiry unnecessary[.]' " *Malott v. Colvin*, No. 4:13-00877-CV-W-NKL, 2014 WL 2759421, at *3 (W.D. Mo. June 18, 2014) (quoting *Sullivan v. Zebley* 493 U.S 521, 532 (1990)).

The Court finds substantial evidence to support the Commissioner's determination at Step Three. (Tr. 6). Plaintiff does not argue that he satisfied the criteria of any of the listings, and he does not challenge any of the ALJ's Step Three findings. In her decision, the ALJ stated that she had considered all of the Listings, including Listings 1.02, 1.04, and 12.04. As the ALJ discussed in her decision, the medical records addressing Plaintiff's physical impairments and mental impairments simply do not establish that these criteria are met. The Court also notes that none of the state agency physicians or psychological consultants found that **Plaintiff had a mental or physical impairment that met or equaled a listed impairment. (Tr. 25, 100-01, 126-27).** To the contrary, as discussed below, both the objective medical evidence and the other evidence in the record demonstrates that Plaintiff had only mild to moderate physical and mental impairments and was capable of performing light work with additional restrictions.

For the above reasons, the Court finds the Commissioner's decision at Step Three was supported by substantial evidence.

### C. The Commissioner's RFC Assessment

The Court next considers whether the Commissioner's RFC analysis supported by substantial evidence. A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel,* 228 F.3d 860,

863 (8th Cir. 2000)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The Court will consider separately the Commissioner's RFC findings with regard to Plaintiff's physical and mental abilities.

### 1. *Plaintiff's Physical RFC*

In assessing Plaintiff's physical RFC, the ALJ found that Plaintiff could perform light work with some additional climbing and postural limitations, and that finding was adopted by the Appeals Council.[3] (Tr. 7, 25). The Court finds this determination is supported by substantial evidence.

As the ALJ noted, Plaintiff did complain of lower back pain and left hip problems on several occasions, and he was treated with medications including ibuprofen, nabumetone, Flexeril, Naprosyn, prednisone, methocarbamol, gabapentin, and hydrocodone, and sometimes with injections. (Tr. 26-27, 385, 382, 380, 474, 471, 467). However, the ALJ properly considered evidence suggesting that Plaintiff's lower back and hip pain were not so limiting that they would preclude him from performing most of the requirements of light work. First, the ALJ properly

---

[3] "Light work" is defined in the regulations as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

considered objective evidence in the record. Diagnostic studies of Plaintiff's lower back and hip showed only mild disease: imaging of the lumbar spine in May 2009 showed only mild degenerative changes of the lumbar spine; imaging of Plaintiff's left hip in January 2014 showed postsurgical changes with mild narrowing of the joint space and no evidence of acute bony abnormality; and imaging of the lumbar spine in October 2014 showed no radiographic evidence of lumbar spine disease. (Tr. 26-27, 380, 389, 402, 458). The ALJ also considered findings from objective physical examinations, including one during the relevant period showing no spinal tenderness, full range of motion, normal motor strength, and normal gait. (Tr. 27, 416). Although an ALJ may not reject a claimant's statements about the intensity and persistence of his symptoms "solely because the available objective medical evidence does not substantiate" those statements, the regulations recognize that objective medical evidence is "a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). *See also Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding RFC finding that was based on largely mild or normal objective findings).

Second, the ALJ reasonably considered the fact that Plaintiff received only conservative treatment for his physical impairments: he was generally treated with medications and sometimes injection, but he was not referred to physical therapy, was not referred to a neurosurgeon or pain management specialist for specialized treatment, and was not offered nerve blocks, or surgical intervention. (Tr. 27). *See, e.g., Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding that

17

ALJ properly considered claimant's relatively conservative treatment history when evaluating her subjective complaints).

Third, the ALJ reasonably considered Plaintiff's reports regarding his daily activities, including the fact that Plaintiff reported being able to prepare his own meals every day, to do household chores, to drive, and to shop in stores. (Tr. 27, 308-11). While a claimant "need not prove [he or she] is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's extensive daily activities can be seen as inconsistent with his subjective complaints of disabling pain and may be considered alongside other factors in assessing the severity of his subjective complaints of pain. *See, e.g., Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints).

Fourth, the ALJ discussed and considered Dr. Leung's consultative examination. (Tr. 27). Dr. Leung's examination contained a mixture of normal findings (such as the findings that Plaintiff was able to walk 50 feet unassisted; was able to hop, heel walk, toe walk, and squat; had no spasms, had pinch strength, arm, leg,, and grip strength that were 4+/5 throughout; and had no difficulties getting on and off the examination table) and findings that would support physical restrictions (such as the findings that Plaintiff had a slight limp, had a positive straight leg test, had difficulty tandem walking, and had decreased range of motion in his cervical spine and lumbar spine). (Tr 27, 452). The ALJ reasonably weighed this evidence along with the rest of the evidence in determining that Plaintiff can could perform light work with some additional restrictions.

Finally, the ALJ considered the opinion evidence in the record. She gave partial weight to the opinions of the state agency medical consultants that Plaintiff could perform medium work,

though the ALJ found that the rest of the records supported more significant limitations. (Tr. 29). It was proper for the ALJ to consider this evidence along with the rest of the evidence in making the RFC determination. *See, e.g.*, *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014) (noting that state agency medical consultants' opinions supported the RFC finding and stating, "'State agency medical and psychological consultants are highly qualified physicians'" whose expert opinions cannot be ignored by ALJs or the Appeals Council") (quoting SSR 96–6P, 1996 WL 374180, *2 (July 2, 1996)).

For all of the above reasons, the Court finds that the physical RFC finding is supported by substantial evidence.

### 2.  *Plaintiff's Mental RFC*

The Court also finds that substantial evidence supports the ALJ's conclusion, adopted by the Appeals Council, that Plaintiff had the severe impairment of depression but would be capable of performing simple, routine tasks, not at a fast pace. (Tr. 7, 25). First, the ALJ reasonably considered that Plaintiff offered no testimony at the hearing regarding functional limitations caused by his depression. (Tr. 27, 45-53). *See Raley v. Astrue*, No. 10-0903-CV-W-ODS, 2011 WL 2650227, at *3 (W.D. Mo. July 6, 2011) (ALJ's decision not to include anxiety-related limitations in the RFC was supported in part by the fact that "[d]uring her testimony, Plaintiff did not mention anxiety as a reason for her inability to work."). Second, the ALJ properly considered the fact that Plaintiff received little or no treatment for his depression. (Tr. 28, 447). Although Plaintiff routinely sought treatment for his physical problems, he did not do so for mental problems, nor did his treatment providers recommend that he seek specialized mental health treatment. *See, e.g.*, *Milam,* 794 F.3d at 985 (failure to seek treatment for an impairment undermines the assertion that the impairment is disabling). Third, the ALJ reasonably considered

medical evidence indicating that Plaintiff's behavior, mood, and affect were within normal limits. (Tr. 28, 415-16, 451). Fourth, the ALJ considered Plaintiff's own reports regarding his daily activities, including his ability pay bills, handle a savings account, go out alone, interact with others on the telephone and Facebook, and manage personal care and household tasks, though the ALJ properly noted that the ability to perform these activities was not proof of the ability to perform substantial gainful activity `(Tr. 25, 28, 309-14). Finally, the ALJ also gave "partial weight" to the opinions of M.W DiFonso, Psy.D., and Ellen Rozenfeld, Psy.D., the state agency psychological consultants who opined that Plaintiff had no more than mild limitations in mental functioning. (Tr. 29, 100-01). However, the ALJ reasonably found that the record supported a finding of a severe depressive order that would require inclusion of some limitations in the RFC. (Tr. 29).

The Court acknowledges, as did the ALJ, that there is some evidence in the record that might tend to support mental limitations more severe than those in the RFC—in particular, the report of consultative examiner Dr. Vincent, who found Plaintiff had emotional instability resulting in irritability and agitation; had episodes of depression that are problematic; had tendency to withdraw and isolate; was easily distractible; and at times had difficulties fully utilizing and actualizing thought processes and problem solving abilities. (Tr. 28, 447). However, as the ALJ noted, Dr. Vincent also reported that Plaintiff had no difficulty interacting with him, that Plaintiff was cognitively intact, and that Plaintiff's effort during the examination was only fair. (Tr. 28, 447). The ALJ included in the RFC a limitation to simple, routine tasks, not at a fast pace, which at least partially accommodates Dr. Vincent's findings regarding Plaintiff's distractibility and difficulty handling stress. The ALJ discussed Dr. Vincent's findings in combination with the rest of the evidence and reasonably concluded that the evidence supported only the limitations in the RFC. It is the ALJ's duty to resolve conflicts in the evidence, including

20

medical evidence, and this Court may not substitute its opinion for the ALJ's. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir.2007) ("This court will not substitute its opinion for the ALJ's who is in a better position to gauge credibility and resolve conflicts in evidence.").

For all of the above reasons, the Court finds the Commissioner's RFC finding was supported by substantial evidence.

### D.   The Commissioner's Findings at Step Five

At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work as a truck driver, so the ALJ moved on to Step Five. At Step Five, the ALJ found that there are jobs that jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier, order caller, and information clerk. (Tr. 7, 30). Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from May 13, 2014 through the date of the decision. (Tr. 31). The Appeals Council adopted these findings only with respect to the period from May 13, 2014, through June 8, 2017. (Tr. 8-9). The Appeals Council found that as of June 9, 2017, the date Plaintiff turned age 55 and thus entered a new age category, Medical-Vocational Rule 202.06 directed a finding that Plaintiff was disabled. (Tr. 9).

After review of the record, the Court finds that the decision of the Commissioner at Step Five is supported by substantial evidence. At Step Five of the sequential analysis, the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that the Plaintiff can perform despite his identified limitations. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2). In making this determination, the Commissioner may satisfy his or her burden by eliciting testimony from a vocational expert based upon hypothetical questions that "set forth impairments supported by substantial evidence on the record and accepted as true and

capture the concrete consequences of those impairments." *Jones v. Astrue,* 619 F.3d 963, 972 (8th Cir. 2010). "A vocational expert's testimony constitutes substantial evidence when it is  based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astrue*, 646 F.3d 549, 560-61 (8th Cir. 2011) (internal quotation marks omitted).

In the instant case, the ALJ described to the vocational expert a hypothetical individual of Plaintiff's age, education, work experience, and RFC, and the vocational expert testified that such a person could perform jobs including cashier (*Dictionary of Occupational Titles* No. 211.462-010, 380,000 jobs nationally); order caller, *Dictionary of Occupational Titles* number 209.667-014, 260,000 jobs nationally; and information clerk, *Dictionary of Occupational Titles* number 237.367-018, 68,000 jobs nationally. (Tr. 55-56). The Court has already found that the RFC was supported by substantial evidence, and Plaintiff identifies no impairments that the ALJ should have, but did not, include in the hypothetical question. Thus, the Court concludes that the hypothetical question posed to the vocational expert included all of Plaintiff's impairments, and the testimony of the vocational expert constitutes substantial evidence in support of the ALJ's finding at Step Five.

### VII.   CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of July, 2020.

22